IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN ENRIQUE CRUZ RIVERA**

Debtor

CASE NO. 15-03421 (MCF)

CHAPTER 7

**NOREEN WISCOVITCH, AS TRUSTEE FOR THE ESTATE OF JUAN ENRIQUE CRUZ RIVERA**

Plaintiff

v.

**BANCO POPULAR DE PUERTO RICO**

Defendant

ADVERSARY CASE NO.

17-00093 (MCF)

## OPINION AND ORDER

This case centers on a chapter 7 debtor's prepetition savings account; the issue is whether either the chapter 7 trustee or a creditor is entitled to around $31,400. The monies were seized by the creditor prepetition asserting its secured status over the debtor's savings account. The chapter 7 trustee seeks to recover them now for the benefit of the estate.[1] If the creditor was indeed secured prepetition, the trustee's avoidance actions are foreclosed. For the reasons explained below, the Court rules in creditor's favor and grants its motion for summary judgment and denies the trustee's motion for summary judgment.

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rules" shall be to the Federal Rules of Bankruptcy Procedure.

-1-

## I. Jurisdiction

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 157(a) and the general order of the United States District Court dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(1) and (b)(2).

## II. Procedural History and Uncontested Facts

On May 5, 2015, Juan E. Cruz Rivera's (hereinafter "the Debtor") filed a chapter 7 petition.[2] Nearly two years later, the chapter 7 trustee Noreen Wiscovitch (hereinafter "the Trustee") filed a complaint to avoid Banco Popular de Puerto Rico's (hereinafter "the Bank") lien on the Debtor's deposit account, and seeking a turnover of the monies therein. In the alternative, the Trustee included a preference action in her complaint to avoid as preferential what she characterizes as the Bank's prepetition setoff of monies in the Debtor's savings account. The Trustee's third cause of action seeks the Bank's return of monies to the estate under either theory and is therefore merely derivative of and dependent upon the success of either actions under sections 544 and 547 in her complaint.[3]

The parties filed cross summary-judgment motions in which they stipulated the salient facts for the Court's review, to wit:[4]

1. Prior to the filing of the bankruptcy petition, the Debtor had a savings account ending in no. 1438 with the Bank. It was opened on October 18, 2012. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 2, ¶ 6; Defendant's Statement of Uncontested Facts; Docket No. 24, at 3, ¶ 2).

2. On October 19, 2012, the Bank loaned monies to the Debtor in the amount of $31,434.17. The Debtor's savings account ending in no. 1438 guaranteed the loan obligation. The

---

[2] Case No. 15-03421, Docket No. 1.

[3] Case No. 15-03421, Docket No. 22.

[4] Rule 56(c) of the Local Civil Rules for the District of Puerto Rico requires parties opposing a motion for summary judgment to submit with their opposition a separate, short, and concise statement of opposing material facts. D.P.R. R. 56(c). However, the parties filed a motion to indicate that all facts as alleged in their summary judgment motions are uncontested. Case No. 17-00093, Docket No. 27.

Debtor was to make eighty-three monthly payments of $78.59, and one lump sum payment at the end of the contract of $31,512.76. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 2, ¶ 7; Defendant's Statement of Uncontested Facts; Docket No. 24, at 2, ¶ 3).

3. The monthly payments were to be debited from another account ending in no. 6280. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 2, ¶ 6; Defendant's Statement of Uncontested Facts; Docket No. 24, at 4, ¶ 6).

4. On October 19, 2012, the Debtor signed a pledge agreement where he authorized the Bank to obtain a security interest in his savings account ending in no. 1438 and which would serve as collateral for the loan obligation and any future loans that the Bank could extend to the Debtor. The pledge agreement was not notarized. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 2, ¶ 8; Defendant's Statement of Uncontested Facts; Docket No. 24, at 4, ¶ 4).

5. The loan agreement provided that if the Debtor defaulted on his loan payments for more than 30 days, the Bank could apply the balance in the Debtor's savings account ending in no. 1438 to the balance of the loan. (Defendant's Statement of Uncontested Facts; Docket No. 24, at 3, ¶4).

6. Banco Popular placed a hold on the Debtor's savings account no. 1438 for a total amount of $31,434.17. Access to the $31,434.17 remained restricted to the Debtor until he completed the monthly payment plan under the loan agreement. During this time, the Debtor did not have this amount available for withdrawal at will. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 3, ¶ 14; Defendant's Statement of Uncontested Facts; Docket No. 24, at 4, ¶ 5).

7. The Debtor defaulted on his monthly payments for more than sixty days in the months of February and March 2015. (Defendant's Statement of Uncontested Facts; Docket No. 24, at 4, ¶ 7).

8. The Debtor's indebtedness to the Bank on account of this loan obligation amounted to $31,736. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 3, ¶ 13).

9. On April 30, 2015, the Bank applied the $31,434.17 from the Debtor's savings account ending in no. 1438 to the loan balance. (Plaintiff's Statement of Uncontested Facts; Docket No. 22, at 3, ¶ 10; Defendant's Statement of Uncontested Facts; Docket No. 24, at 4, ¶ 8).

### III. Standard for Summary Judgment

Summary judgment is appropriate when the movant shows that there are no genuine disputes of material facts and consequently, the movant is entitled to a judgment as a matter of

law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross motion and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc., 615 F.3d 45, 51 (1st Cir. 2010).  If there are no disputed material facts, only one party is entitled to judgment as a matter of law.  In re Cousins Int'l Food Corp., 553 B.R. 197, 204–05 (Bankr. D.P.R. 2016), aff'd in part, Cousins Int'l Food, Corp., WL 1075044 (B.A.P. 1st Cir. Mar. 21, 2017). This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law, pursuant to Fed. R. Civ. P. 56(c), as made applicable to these proceedings by virtue of Fed. R. Bankr. P. 7056. Celotex, 477 U.S. 317 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

### IV. Parties' Positions

The Trustee alleges that the monies deposited in the Debtor's savings account which the Bank seized six days prior to the filing of the petition are recoverable by the estate. Her argument is twofold. First, the Trustee argues that the Bank's lien on the Debtor's savings account is avoidable, pursuant to 11 U.S.C. § 544(a)(1). According to the Trustee, the Bank did not perfect its security interest in the Debtor's savings account ending in no.1438 because the date of the pledge agreement was not notarized in an authentic document, thereby making the pledge agreement ineffective against third parties. The Bank, however, contends that it had a perfected security interest in the Debtor's savings account under applicable local law.

The Trustee's alternative ground for recovery is that the Bank's prepetition enforcement of the monies is avoidable as a preferential transfer of the Debtor's property, pursuant to 11 U.S.C. § 547. The Bank reaffirms its secured position at the time it applied the monies in the account towards the debt. Despite the Bank's prepetition enforcement, it asserts that even as a

secured creditor, in a hypothetical liquidation, it would still be entitled to receive the full value of its collateral, rendering the Code's preference provisions inapplicable. The Bank also argued that it had a valid right of setoff which entitled it to the monies in the Debtor's savings account.

### V. Discussion

Two issues must be decided: (1) whether the Bank has or had a perfected security interest in the Debtor's savings account subject to avoidance by the Trustee under 11 U.S.C. § 544(a); and (2) whether the Bank's enforcement of monies in the Debtor's savings account, effectuated six days prior to petition date, is a preferential transfer of property which is avoidable under 11 U.S.C. § 547(a).

### A. Lien avoidance under 11 U.S.C. § 544(a)(1)

With respect to the issue of lien avoidance, section 544(a)(1) states in its relevant portions:

> (a) The trustee . . . may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> . . .
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists. . . .

11 U.S.C. § 544(a)(1).

A transfer of property occurs in any of the following situations: ". . . (A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with-- (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54). State law determines how a debtor may transfer an interest in property. 2 COLLIER ON BANKRUPTCY ¶ 101.54[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017).

Property interests, such as security interests, are created and defined by state law. <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979). "[T]he laws of Puerto Rico are the functional equivalent of state laws." <u>Antilles Cement Corp. v. Fortuño</u>, 670 F.3d 310, 323 (1st Cir. 2012).

The court must look to specific laws addressing security interests in personal property, to wit, the Debtor's savings account.

> In Puerto Rico, there are several means in order to perfect a pre-petition security interest. Our analysis requires consideration of what type of interest needs to be perfected, what law or laws apply and what, if anything, the local courts have stated in order to fill voids in the applicable law.
> . . .
> Puerto Rico's unique legal marriage between civil and common law traditions allow for several legal sources to govern commercial transactions. . .Application of these sources must follow a hierarchical order, usually from the most specific law to the most general law. A special law on a subject matter should prevail over any other statute of a general character.

<u>In re Manuel Mediavilla</u>, Inc., 505 B.R. 94, 103-105 (2014).

Deposit accounts fall within the scope of personal property regulated by Puerto Rico's Commercial Transactions Act, P.R. Laws Ann. tit. 19, § 2219(a). Section 9-109 of the Commercial Transactions Act specifically states that the Civil Code of Puerto Rico shall not apply with regard to security interests in personal property covered by the Commercial Transactions Act. P.R. Laws Ann. tit. 19, § 2219(e).[5] The Debtor's savings account is within the Commercial Transactions Act's definition of a "deposit account." The Commercial Transactions Act defines a deposit account as ". . . a demand, time, savings, passbook, or similar account maintained with a bank." P.R. Laws Ann. tit. 19, § 2212(29). Therefore, the applicable law for the creation and perfection of security interests in deposit accounts is the Commercial

---

[5] Act No. 241 of September 19, 1996 (a prior version of the Commercial Transactions Act regulating Secured Transactions) also contained the same provision.

-6-

Transactions Act of Puerto Rico and not the Civil Code.[6]

A security interest in a deposit account may be perfected by control, under Sections 9-104 and 9-314(a) of the Commercial Transactions Act. P.R. Laws Ann. tit. 19, § 2214(a); P.R. Laws Ann. tit. 19, § 2264. Section 9-314(a) expressly states that "a security interest in. . .deposit accounts may be perfected by. . . control under Section 9-104. P.R. Laws Ann. tit. 19, § 2264. Section 9-104(a)(1) provides the requirements for control of the collateral; "A secured party has control of a deposit account if. . .(1) the secured party is the bank with which the deposit account is maintained . . .". P.R. Laws Ann. tit. 19, § 2214(a).

The Trustee's allegation that the Bank's security interest in the Debtor's savings account was unperfected because it was not notarized as required by the Civil Code, and therefore ineffective against third parties, is incorrect. As previously stated, the Civil Code is not applicable to security interests in deposit accounts. "No other form of public notice is necessary; all actual and potential creditors of the debtor are always on notice that the bank with which the debtor's deposit account is maintained may assert a claim against the deposit account." Lynn M. Lo Pucki & Elizabeth Warren, BANKRUPTCY AND ARTICLE 9, at 78 (2013). Furthermore, if the parties have so agreed, the secured party may "apply the balance of the deposit account to the obligation secured by the deposit account" in case of default. P.R. Laws Ann. tit. 19, § 2367(a)(4).

---

[6] The Trustee relies on the law of pledges in Puerto Rico's Civil Code and as interpreted by a sister court in this district in In re Almacenes Gigante, Inc., 159 B.R. 638 (Bankr. D.P.R. 1993). The Trustee's argument omits more than 20 years of legislation in Puerto Rico regarding liens on personal property. Puerto Rico's Commercial Transactions Act—to some extent—adopted the Uniform Commercial Code's modernization of the law governing commercial transactions, beginning with Act No. 208 of August 17, 1995. Act No. 21 of January 17 of 2012 updated the Uniform Commercial Code's Article 9. Almacenes Gigante's holding regarding pledges was rendered in 1993 under applicable law at that time period. Since the new law was enacted, the provisions of the Civil Code are inapplicable to the case at hand.

-7-

Prepetition, the Bank had its interest in the Debtor's savings account perfected by its control because the savings account was maintained with the Bank. The Bank had a perfected security interest since October 19, 2012, three years before the Debtor's bankruptcy filing. As such, the Debtor's savings account was subject to the Bank's lien, under P.R. Laws Ann. tit. 19, § 2264; UCC Section 9-314.  The Bank had a perfected security interest in the Debtor's savings account by April 30, 2015, when it seized the monies therein. As such, the Bank's security interest is unavoidable under 11 U.S.C. § 544(a)(l).

### B.  Avoidance of a transfer as preferential, under § 547

Turning to the Trustee's preference cause of action, section 547(b) of the   Bankruptcy Code allows a trustee to recover as preferential certain transfers of a debtor's assets that occur within the ninety-day period prior to a bankruptcy and for the benefit of a creditor. The section states as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under Chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The first four elements of the statute are not in dispute: 1) the transfer at hand occurred

-8-

prepetition and to the Bank's benefit; 2) the transfer was on account of an antecedent debt owed by the Debtor; 3) a presumption of insolvency existed at the time of the transfer;[7] 4) and the Bank's withdrawal of monies was made within the ninety day period prior to the Debtor's bankruptcy filing. The legal controversy revolves around the fifth element, which inquires whether the Bank would receive more than it would be entitled to receive under the Code in a hypothetical chapter 7 liquidation in which the prepetition transfer had not occurred.

Before a trustee in bankruptcy can avoid a preferential transfer, the trustee must establish that the transfer enabled a creditor to receive more than the creditor would have received under a chapter 7 liquidation.[8] As part of this analysis, courts must decide the transferee's creditor class and determine what distribution that class would have received had the transfer not been made. 5 COLLIER ON BANKRUPTCY ¶ 547.03[7] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017).

Generally, prepetition payments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a chapter 7 liquidation. Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, LP), 171 F.3d 249 (5th Cir. 1999); In re Inofin Inc., 512 B.R. 19, 94-95 (Bankr. D. Mass. 2014); 5 COLLIER ON BANKRUPTCY ¶ 547.03[7] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017). The Court finds a Fifth Circuit court's statement to this effect persuasive:

> [A] fully secured creditor who receives a prepetition payment does not receive a greater percentage than he would have in a bankruptcy proceeding because as a fully secured creditor he would have recovered

---

[7] Subsection 547(f) provides that "[f]or. . .[preferential transfers purposes], the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f).
[8] Section 547(g) provides:

> For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547(g).

100% payment in a bankruptcy proceeding. **Accordingly, a creditor who recovers his own collateral is not deemed to have recovered a greater percentage than he would have in bankruptcy.**

El Paso Refinery, 171 F.3d at 254 (Emphasis added).

Thus, prepetition transfers to secured creditors are not prejudicial to other creditors of the estate because the secured debt will be paid in full; either because the debtor paid it within the preferential period, or because the creditor would be entitled to full payment from the bankruptcy estate's assets as a secured creditor, pursuant to 11 U.S.C. § 725;[9] Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 979, 197 L. Ed. 2d 398 (2017)("Secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secures their debts.").

The Trustee's argument for avoidance is based on the erroneous assumption that the Bank was an unsecured creditor. Here, the Bank had a perfected security interest in the Debtor's savings account since 2012. Had the transfer not occurred, the Bank would be entitled to assert its prepetition claim of $31,736. In hypothetical chapter 7 liquidation, the Bank could assert a secured claim in the amount of $31,434.17, fully secured by its collateral—the Debtor's savings account. Had the Bank not seized the monies in the Debtor's savings account, it would have had secured status over its collateral in a hypothetical chapter 7 liquidation. Furthermore, in the distribution to creditors the Bank would be entitled to full payment from the Debtor's savings account as a result of its secured claim. The Bank would receive priority over the unsecured creditors and therefore would receive payment of its secured claim up to the value of its collateral—$31,434.17. Therefore the Trustee failed to prove the fifth element for a preference

---

[9] Section 725 states:

> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

11 U.S.C. § 725.

-10-

cause of action.[10]

## VI. Conclusion

Based on the undisputed facts and the conclusions of law, the Bank is entitled to summary judgment. The Bank had a valid and enforceable lien on the Debtor's savings account. The monies did not come into the bankruptcy estate because the Bank enforced its interest on the Debtor's savings account prepetition. The Court denies the Trustee's avoidance action, pursuant to 11 U.S.C. § 544(a). The Trustee's alternative argument seeking to undo the Bank's prepetition enforcement over the Debtor's savings account through a preference action is also denied because the Trustee failed to establish all the necessary elements for an action under 11 U.S.C. § 547(b). As a result of the Court's holding under sections 544(a) and 547(b), there is no need to address the Trustee's third cause of action for turnover. Given that the Trustee's request for turnover of monies is dependent on the causes of action denied by this Court, it is also denied, pursuant to 11 U.S.C. § 542.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of August, 2018.

_____
MILDRED CABAN FLORES
United States Bankruptcy Judge

---

[10] Both parties addressed the issue of whether or not the Bank was entitled to setoff under 11 U.S.C. § 553. The Bank's consensual lien renders an analysis of setoff rights unnecessary in this case. The Bank obtained its secured status by virtue of a lien over the Debtor's savings accounts. Parties' contentions under 11 U.S.C. § 553, regarding the Bank's alleged right of setoff, are inapposite.